Michael D. Murphy (SBN 224678)
  mmurphy@ecjlaw.com
Kenneth P. Hsu (SBN 306326)
  khsu@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212-2974
Telephone  (310) 273-6333
Facsimile  (310) 859-2325

Attorneys for Respondents and Counter-Petitioners
Have A Heart Compassion Care, Inc. and Ryan Kunkel

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ELIAS SHIBER, an individual; and CANA, INC., a California corporation,<br><br>Petitioners and Counter-Respondents,<br><br>v.<br><br>HAVE A HEART COMPASSION CARE, INC., a Washington corporation; and RYAN KUNKEL, an individual,<br><br>Respondents and Counter-Petitioners, | Case No. 2:20-cv-05441-SVW-SHK<br><br>*Hon. Stephen V. Wilson – Courtroom 10A*<br><br>**RESPONDENTS AND COUNTER-PETITIONERS HAVE A HEART COMPASSION CARE, INC. AND RYAN KUNKEL'S COMBINED**<br><br>**(1) NOTICE OF HEARING AND MOTION TO CONFIRM ARBITRATION AWARD; AND**<br><br>**(2) OPPOSITION TO PETITIONERS ELIAS SHIBER AND CANA, INC'S MOTION TO VACATE THE SAME ARBITRATION AWARD**<br><br>*[Declaration of Michael D. Murphy; Evidentiary Objections to Declarations of Elias Shiber and Faryan A. Afifi, Esq.; and [Proposed] Order filed concurrently herewith]*<br><br>Date:     September 21, 2020<br>Time:     1:30 p.m.<br>Crtrm.:   10A<br><br>*Petition Filed:  May 11, 2020* |

ERVIN COHEN & JESSUP LLP

16666.1:9968390.3

HAVE A HEART COMPASSION CARE, INC. AND RYAN KUNKEL'S COMBINED MOTION TO CONFIRM
ARBITRATION AWARD AND OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD

ERVIN COHEN & JESSUP LLP

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, on September 21, 2020, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 10A of the above-entitled Court, located at 350 West 1st Street, 10th Floor, Los Angeles, California 90012, Respondents and Counter-Petitioners Have A Heart Compassion Care, Inc. and Ryan Kunkel (collectively, "Respondents") will, and hereby do, move this Court for an order confirming the JAMS arbitration award, dated February 5, 2020, rendered in favor of Respondents and against Petitioners and Counter-Respondents Elias Shiber and Cana, Inc. (collectively, "Petitioners") in the matter of *Have A Heart Compassion Care, Inc. et al. v. Elias Shiber et al.*, JAMS Case No. 1210036053 (the "Arbitration Award"). A true and correct copy of the Arbitration Award is filed concurrently herewith as Exhibit A to the Declaration of Michael D. Murphy.

This Motion is made on the grounds that Petitioners and Respondents voluntarily entered into a binding arbitration agreement that did not expressly adopt the California Arbitration Act (thus triggering the Federal Arbitration Act), and agreed to submit the underlying dispute to arbitration before a JAMS neutral. Petitioners and Respondents are thus bound by the resulting Arbitration Award, which followed a five-day arbitration hearing in which all parties presented extensive oral and documentary evidence. Petitioners have not – and cannot – identify any grounds to modify, correct, or vacate the Arbitration Award. Accordingly, this Motion should be granted and Petitioners' competing Motion to Vacate Arbitration Award should be denied. (ECF No. 14.)

This Motion is made pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, and this Court's order dated August 18, 2020. (ECF No. 12.) This Motion is also based upon Respondents' Counter-Petition to Confirm Arbitration Award (ECF No. 8), Respondents' Notice of Removal (ECF No. 1), this Notice, the accompanying Memorandum of Points and Authorities (which simultaneously explains the facts and law in support of confirmation, as well as in opposition to

2

1  Petitioners' Motion to Vacate Arbitration Award), the concurrently filed Declaration

2  of Michael D. Murphy, the concurrently filed [Proposed] Order, the pleadings, files

3  and records in this action, and such further evidence and argument that may be

4  presented to the Court at or before the hearing of this Motion and the concurrently

5  pending Motion to Vacate Arbitration Award filed by Petitioners.

6

7  DATED:  August 31, 2020              ERVIN COHEN & JESSUP LLP

8

9

10                                             By:  _____/s/ Michael D. Murphy_____

11                                                     Michael D. Murphy
                                                       Attorneys for Respondents and Counter-
12                                                     Petitioners Have A Heart Compassion
                                                       Care, Inc. and Ryan Kunkel
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ERVIN COHEN & JESSUP LLP

HAVE A HEART COMPASSION CARE, INC. AND RYAN KUNKEL'S COMBINED MOTION TO CONFIRM
ARBITRATION AWARD AND OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ..................................................................................... 1

II.     RELEVANT BACKGROUND ................................................................. 2

        A.      The Arbitration Agreement ........................................................ 2

        B.      The Pre-Hearing Arbitration Proceedings ................................. 3

        C.      The Arbitration Hearing ............................................................. 5

        D.      The Arbitration Award ............................................................... 5

III.    ARGUMENT ........................................................................................... 6

        A.      The FAA Governs the Arbitration Award. ................................ 6

        B.      The Arbitration Award Should Be Confirmed and Judgment
                Entered Thereon. ....................................................................... 8

        C.      Petitioners Fail to Identify Any Grounds to Vacate The Award. ........... 9

                1.      Cana Is Bound by the Arbitration Award. ..................... 10

                2.      The Arbitrator Did Not Engage in Any Misconduct or
                        Otherwise Prejudice Petitioners ................................... 13

                        (a)     The Arbitrator Did Not Exhibit Bias or Disparately
                                Treat the Parties. ............................................... 14

                        (b)     Petitioners Were Not Prejudiced. ..................... 16

                3.      Petitioners' Attempt to Relitigate the Dispute Fails. .......... 17

                4.      In Any Event, The Arbitrator Properly Rescinded the
                        Transaction ..................................................................... 18

        D.      The CAA Does Not Compel A Different Result. ..................... 19

IV.     CONCLUSION ...................................................................................... 20

ERVIN COHEN & JESSUP LLP

i

HAVE A HEART COMPASSION CARE, INC. AND RYAN KUNKEL'S COMBINED MOTION TO CONFIRM
ARBITRATION AWARD AND OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.G. Edwards & Sons, Inc. v. McCollough*,
967 F.2d 1401 (9th Cir. 1992) ................................................................. 16

*Advanced Micro Devices, Inc. v. Intel Corp.*,
9 Cal. 4th 362 (1994) ............................................................................. 18

*Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*,
264 F. Supp. 2d 926 (N.D. Cal. 2003) ..................................................... 7

*Comer v. Micor, Inc.*,
436 F.3d 1098 (9th Cir. 2006) ......................................................... 10, 11

*Dist. Council of Iron Workers of State of California & Vicinity v. Pitner
& Zenor*,
246 F.3d 673 (9th Cir. 2000) ................................................................. 12

*Douglass v. Serenivision, Inc.*,
20 Cal. App. 5th 376 (2018) ................................................................... 12

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin
Intermediates, S.A.S.*,
269 F.3d 187 (3d Cir. 2001) ................................................................... 11

*Fairchild & Co., Inc. v. Richmond, F. & P. R. Co.*,
516 F. Supp. 1305 (D.D.C. 1981) ........................................................... 16

*Fid. Fed. Bank, FSB v. Durga Ma Corp.*,
386 F.3d 1306 (9th Cir. 2004) ............................................................ 7, 9

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) ............................................................................... 10

*Golden State Bank v. First-Citizens Bank & Tr. Co.*,
No. 10-526-GW, 2012 WL 12985121 (C.D. Cal. Apr. 30, 2012) .................. 20

*Maaso v. Signer*,
203 Cal. App. 4th 362 (2012) ................................................................. 16

ERVIN COHEN & JESSUP LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

HAVE A HEART COMPASSION CARE, INC. AND RYAN KUNKEL'S COMBINED MOTION TO CONFIRM
ARBITRATION AWARD AND OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD

*Moncharsh v. Heily & Blasé*,
   3 Cal. 4th 1 (1992) ........................................................................... 18

*Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp.*,
   935 F.2d 1019 (9th Cir. 1991) ....................................................... 18

*PowerAgent Inc. v. Elec. Data Sys. Corp.*,
   358 F.3d 1187 (9th Cir. 2004) ....................................................... 12

*Ralph Andrews Prods., Inc. v. Writers Guild of Am., W.*,
   938 F.2d 128 (9th Cir. 1991) ......................................................... 10

*Royal All. Assocs., Inc. v. Liebhaber*,
   2 Cal. App. 5th 1092 (2016) .......................................................... 10

*Sovak v. Chugai Pharm. Co.*,
   280 F.3d 1266 (9th Cir. 2002) ..................................................... 7, 8

*TIG Ins. Co. of Michigan v. Homestore, Inc.*
   (2006) 137 Cal. App. 4th 749 ....................................................... 18

*United Paperworkers Intern. Union, AFL–CIO v. Misco, Inc.*,
   484 U.S. 29 (1987) ......................................................................... 18

*United States Life Ins. Co. v. Superior Nat'l Ins. Co.*,
   591 F.3d 1167 (9th Cir. 2010) ................................................ 10, 18

*ValueSelling Assocs., LLC v. Temple*,
   No. 09-CV-1493-JM, 2011 WL 2532560 (S.D. Cal. June 23, 2011),
   aff'd, 520 F. App'x 593 (9th Cir. 2013) ......................................... 8

*Wynn Resorts, Ltd. v. Atl.-Pac. Capital, Inc.*,
   497 F. App'x 740 (9th Cir. 2012) ................................................. 13

**Statutes**

9 U.S.C. § 9 ............................................................................................ 1, 9

9 U.S.C. § 10(a) .................................................................................... 1, 10

CAA ....................................................................................... 7, 8, 19, 20

Cal. Civ. Code § 1689(a) ........................................................................ 19

Cal. Code Civ. Proc. § 1286 ................................................................... 20

ERVIN COHEN & JESSUP LLP

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ERVIN COHEN & JESSUP LLP

Cal. Code Civ. Proc. § 1286.2 ..................................................................20

Cal. Code Civ. Proc. § 1286.2(a)(5) ........................................................20

California Arbitration Act..........................................................................1

CCP § 1286.2(a)(6)...................................................................................20

HAVE A HEART COMPASSION CARE, INC. AND RYAN KUNKEL'S COMBINED MOTION TO CONFIRM
ARBITRATION AWARD AND OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

At issue in these competing petitions is a comprehensive and well-reasoned arbitration award that resolved a straightforward contractual dispute in favor of Respondents and Counter-Petitioners Have A Heart Compassion Care, Inc. ("Have A Heart") and Ryan Kunkel ("Kunkel," and collectively, "Respondents"). That award was issued after (1) a five-day arbitration hearing, in which all parties presented extensive oral and documentary evidence (as well as extensive discovery), (2) extensive briefing both before and after that hearing, and (3) a one-hour closing argument. At no point during the briefing, testimony, or oral argument did Petitioners raise any objections as to jurisdiction, arbitrability, or fairness. Accordingly, pursuant to the Federal Arbitration Act's (the "FAA") clear statutory language, the Court "must" confirm the award and enable Respondents to obtain the relief they sought when they commenced arbitration proceedings. 9 U.S.C. § 9.

Petitioners and Counter-Respondents Elias Shiber ("Shiber") and Cana, Inc. ("Cana," and collectively, "Petitioners") purport to complicate what should be a summary confirmation proceeding with their competing motion to vacate the arbitration award. (ECF No. 14 (the "Motion to Vacate").) Nevertheless, besides its flatly erroneous and exclusive reliance on state law and the inapplicable California Arbitration Act (the "CAA"), the Motion to Vacate fails to come close to identifying any reason to vacate the award under the FAA, which specifies four grounds for vacatur generally requiring a showing of an arbitrator's "corruption, fraud, or undue means" or "exceeding" abuse of her powers. 9 U.S.C. § 10(a).

Rather than establish that any one of these four grounds applies here (they do not), Petitioners desperately and shamefully resort to slinging mud against the arbitrator, an esteemed JAMS neutral with over 20 years of experience in resolving complex commercial disputes. Petitioners go so far (or low) as to publicly file photographs of the arbitrator secretly taken during the arbitration proceedings and to

1

1  accuse her of "racist bias," without any evidentiary support. (ECF No. 14-14 ¶ 11

2  (Declaration of Elias Shiber).) Laughably, many of the statements they attribute to

3  her to show "bias," were actually made by someone else – usually counsel for a

4  party. This needless personal attack is not only entirely unfounded, but also reflects

5  the frivolous nature of Petitioners' attempt to undo the arbitration proceedings that,

6  as their own exhibits show, were fairly conducted.

7  In the end, try as they might with personal attacks against the arbitrator, and

8  their cherry picked testimony attempting to re-litigate the merits of their case,

9  Petitioners cannot un-bind themselves from the arbitration award, nor can they ask

10  this Court to reconsider the claims and defenses that have already been adjudicated.

11  For these reasons, the Court should grant this Motion to Confirm the Arbitration

12  Award, and deny the competing Motion to Vacate.

13  **II.   RELEVANT BACKGROUND**

14  **A.   The Arbitration Agreement**

15  The parties do not dispute that the underlying arbitration and arbitration

16  agreement arose from, and are governed by, four interrelated agreements that each

17  incorporate one another, comprising a collective single transaction (the

18  "Transaction") between Petitioners, on the one hand, and Respondents, on the other.

19  Pursuant to the Transaction, (1) Cana, through Shiber, agreed to effectively, fully,

20  and legally assign Cana's rights pursuant to four cannabis business licenses (the

21  "Licenses") issued by the City of Maywood, California (the "Cannabis License

22  Assignment," filed concurrently herewith as Exhibit B) to Have A Heart; (2) Shiber

23  agreed to lease to Have A Heart certain commercial real property located at 4027 E.

24  52nd Street in the City of Maywood (the "Property") for five-year renewable terms

25  up to 95 years (the "Lease," filed concurrently herewith as Exhibit C); and (3)

26  Kunkel agreed to personally guarantee the Cannabis License Assignment and the

27  Lease (the "Personal Guarantees," filed concurrently herewith as Exhibits D and E).

28  (Decl. of Michael D. Murphy filed concurrently herewith ("Murphy Decl."), Exs. B-

ERVIN COHEN & JESSUP LLP

E.)

As is relevant herein, Section 6.2 of both the Cannabis License Assignment and the Lease – titled "Arbitration" – and Paragraphs 12 of both the Personal Guarantees (collectively, the "Arbitration Agreement") each provides as follows:

> [A]ny dispute, claim, or controversy arising out of or relating to this [License] Assignment, or the breach, termination, enforcement, interpretation, or validity thereof, including the determination of the scope or applicability of this Assignment to arbitrate, that is not resolved as part of mediation as required by Section 6.1 of this Assignment shall be determined by arbitration in Los Angeles County before one arbitrator. The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures. *Judgment on the award may be entered in any court of competent jurisdiction.* The parties agree that the prevailing party shall be awarded its reasonable attorneys' fees and litigation costs . . .

(Murphy Decl., Ex. B at 10-11; Ex. C at 14; Exs. D, E at 2 ¶ 12 (emphasis added).) Importantly, the Arbitration Agreement itself does not reference any specific body of law or express any intent to be bound by any body of law, state or federal. (*Id.*)

**B.     The Pre-Hearing Arbitration Proceedings**

On January 15, 2019, Respondents filed their Mediation and Arbitration Demand with JAMS (the "Demand"), asserting causes of action against Petitioners for, as is relevant here, (1) rescission of the Transaction; (2) unjust enrichment against Shiber; and (3) declaratory relief providing that, among other things, the Transaction had been rescinded. In sum, the Demand sought to rescind the Transaction pursuant to express provisions in the Cannabis License Assignment and Lease unambiguously providing that the Transaction was "terminated and/or mutually rescinded" in the event that the Licenses were not "fully transferable and assignable" or did not successfully deliver to Respondents "approval and legal authority to conduct the cannabis businesses" – *i.e.,* if the entire purpose of the Transaction was not achieved. (Murphy Decl., Ex. B at 4, Ex. C at 3.) As relief, the Demand sought (1) a return of all rent and license fees paid to Shiber pursuant to

ERVIN COHEN & JESSUP LLP

3

1   the rescinded Transaction; (2) reimbursement from Shiber for Have A Heart's vast

2   improvements to the Property prior to rescission, (3) declarations that the

3   Transaction has been rescinded, and, thus, each of the agreements, including the

4   guarantees of Kunkel, are of no force and effect, and (4) a finding that Cana was

5   Shiber's alter ego, and, therefore, is jointly and severally liable. (Murphy Decl., Ex.

6   F (Arbitration Demand) at 15-16.)

7       On April 5, 2019, Petitioners filed an Answer and General Denial with

8   JAMS, denying Respondents' causes of action and allegations and asserting

9   numerous defenses. Notably, Petitioners' "Twenty-First Separate Affirmative

10  Defense" in their Answer contained a generic, boilerplate assertion that "the ***court***

11  has no jurisdiction over the complained of acts and alleged wrongdoings." The

12  Answer did not raise any challenge as to the arbitrability of the dispute. (Murphy

13  Decl., Ex. G (Answer and General Denial) at 5 (emphasis added).)

14      Also on April 5, 2019, Shiber filed a Statement of Counter-Claim asserting

15  causes of action for (1) breach of contract against Respondents; (2) breach of

16  fiduciary duty against Have A Heart; and (3) fraud against Have A Heart. (Murphy

17  Decl., Exs. H-I (Statement of Counter-Claim and Answer).) Unlike Shiber, Cana

18  did not plead any counter-claims. Nonetheless, Cana was represented by counsel

19  throughout the arbitration proceedings, including at the arbitration hearing.

20      On May 6, 2019, the arbitrator conducted a Case Management Conference.

21  Prior to that conference, the arbitrator circulated an Agenda which identified in

22  Section 2 that she would expect the parties to identify whether anyone not expressly

23  named in the arbitration clause – in this case, Cana, the alter ego of Shiber – was

24  challenging its having been named as a Respondent. (ECF No. 8-5 at 2 ("Is there a

25  party not specifically named in the clause?").) Indeed, during the May 9, 2019

26  hearing, the arbitrator expressly asked if any party was challenging jurisdiction or

27  arbitrability. (Murphy Decl. ¶ 9.) In response, Petitioners' counsel represented that

28  they were not making any such challenges. (*Id.*) Under Rule 11 of the JAMS

4

ERVIN COHEN & JESSUP LLP

1   Commercial Arbitration Rules governing the proceedings, to which Petitioners both

2   consented, any jurisdictional challenges should have been presented to the

3   Arbitrator. (*Id.*¶ 20; Ex. O.) Following that case management hearing, Petitioners

4   never raised any jurisdictional issues in the arbitration proceedings. (*Id.* ¶¶ 9, 22.)

5       **C.**       **The Arbitration Hearing**

6       After discovery, from November 18 through 22, 2019, the parties participated

7   in a five-day hearing in Century City, California, in front of the arbitrator selected

8   by the parties – Zela G. Claiborne of JAMS (the "Arbitrator"), an accomplished,

9   full-time neutral who has specialized in arbitrating complex business and contract

10  disputes at JAMS since 1998. (Murphy Decl. ¶ 8, Ex. J (biography and practice

11  areas).) At the hearing, all parties presented extensive oral and documentary

12  evidence to the Arbitrator, including testimony from ten witnesses. (*Id.* ¶ 11.)

13      During the hearing, the Arbitrator listened intently to the testimony of each

14  witness, diligently taking notes and occasionally interacting with counsel and

15  witnesses when certain objections or questions arose. (Murphy Decl. ¶¶ 14-18.)

16  Also during the hearing, neither Petitioners nor Respondents objected to the

17  Arbitrator's jurisdiction over the parties, to her fair consideration of the evidence

18  presented, or to her conduct during the arbitration proceedings. (*Id.* ¶ 14.) To the

19  contrary, the hearing record reveals that, while she sought to have the hearing

20  proceed efficiently, the Arbitrator acted professionally and cordially with counsel,

21  parties, and witnesses, including Petitioners' witnesses and Shiber himself. (*Id.*)

22      **D.**    **The Arbitration Award**

23      On January 2, 2020, after all evidence, briefing, and argument was submitted,

24  the Arbitrator issued a detailed, ten-page Interim Award awarding Respondents

25  $716,714.53, reflecting all rent and license fees to be returned, plus prejudgment

26  interest, on their claim for rescission of the Transaction, and $641,049.55, reflecting

27  Have A Heart's improvements on Shiber's property, plus prejudgment interest, on

28  their claim for unjust enrichment. The Interim Award rejected, on the merits, each

ERVIN COHEN & JESSUP LLP

1   of Shiber's counter-claims. The Interim Award further held that, "[a]s shown at the

2   hearing, Cana is the alter-ego of Shiber," as was alleged in the Demand.[1]

3          On February 5, 2020, after reviewing Respondents' Application for

4   Attorneys' Fees, Costs, and Prejudgment Interest and Petitioners' Opposition to that

5   Application, the Arbitrator issued a 12-page final Arbitration Award awarding

6   Respondents a total amount of $1,831,034.70, consisting of (1) a collective

7   damages award of $1,367,764.08, as described above; (2) $369,363.49 in

8   reasonable attorneys' fees and costs; and (3) $93,907.31 in prejudgment interest.

9   (Murphy Decl., Ex. A, at 11.) The Arbitration Award also adopted the Interim

10  Award's finding that, "[a]s shown at the hearing, Cana is the alter-ego of Shiber,"

11  as was alleged in the Demand. (*Id.* at 2.) Finally, the Arbitration Award stated that,

12  "[t]his Final Award is in full and complete settlement and satisfaction of any and all

13  claims submitted in this arbitration." (*Id.* at 12.)

14         On May 11, 2020, Petitioners filed a petition to vacate the Arbitration Award

15  in the Superior Court of California. (ECF No. 1-1, Ex. A.) On June 18, 2020,

16  Respondents removed Petitioners' petition to this Court. (ECF No. 1.) On August 3,

17  2020, Respondents filed a counter-petition to confirm the Arbitration Award. (ECF

18  No. 8.) On August 18, 2020, this Court ordered the parties to file competing

19  motions to confirm and to vacate the Arbitration Award. (ECF No. 12.) On August

20  25, 2020, Petitioners filed the Motion to Vacate, which Respondents now oppose.[2]

21  **III.   ARGUMENT**

22         **A.     The FAA Governs the Arbitration Award.**

23  _____

24  [1] The Interim Award declared Respondents the prevailing parties in the arbitration
    pursuant to the arbitration provisions of the Transaction, which each state that "the
25  prevailing party shall be awarded its reasonable attorneys' fees and litigation costs."

26  [2] Petitioners' Motion to Vacate appears to violate this Court's Local Rule No. 11-
27  3.1.1 requiring "14-point or larger" font size, and, as such it violates this Court's
    order that the parties' briefing "be no more than 20 pages long." (ECF No. 12.)
28

ERVIN COHEN & JESSUP LLP

1   As an initial matter, pursuant to well-established precedent, the instant

2   motion and the competing Motion to Vacate are governed by the FAA, *not* by the

3   CAA, as Petitioners contend. (Mot. [ECF No. 14] at 7-8.)

4   Courts have uniformly held that, in cases seeking review of an arbitration

5   award in federal court, "there is a strong default presumption that the FAA, not state

6   law, supplies the rules for arbitration." *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266,

7   1269 (9th Cir. 2002)). Accordingly, "[p]arties wishing to be bound by state law

8   rules instead must *clearly evidence their intent* to be bound by such rules as part of

9   their arbitration agreement." *Id.* (emphasis added); *see Certain Underwriters at*

10  *Lloyd's London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 926, 932 (N.D. Cal. 2003)

11  ("Such a strong default presumption is in keeping with Congress' purpose in

12  enacting the FAA"). Under this rigorous standard, courts have refused to apply the

13  CAA even when California law is expressly referenced in the relevant arbitration

14  agreement itself. *See, e.g., Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 386 F.3d 1306,

15  1312 (9th Cir. 2004) (CAA did not apply to clause for "arbitration in accordance

16  with the laws of the State of California and the rules of the American Arbitration

17  Association"). Here, the FAA governs the Arbitration Award because the

18  Arbitration Agreement does not even slightly evidence any intent to be bound by

19  the CAA, let alone a "clear intent" to do so. In fact, the Arbitration Agreement does

20  not reference any specific body of law governing arbitration whatsoever, state or

21  federal. (Murphy Decl., Ex. B at 10-11; Ex. C at 14; Exs. D, E at 2 ¶ 12.)

22  Petitioners argue that that the CAA nonetheless applies because the

23  agreements "state they are governed by California Law in Section 4," which

24  includes a generic choice-of-law provision stating that the "construction,

25  interpretation, performance, and enforcement of [the agreements] shall be governed

26  by the laws of the State of California."[3] (Mot. at 7; *see* Murphy Decl., Ex. B at 9.)

27

28  [3] Petitioners misleadingly claim that, for purposes of arbitration, the Cannabis

HAVE A HEART COMPASSION CARE, INC. AND RYAN KUNKEL'S COMBINED MOTION TO CONFIRM
ARBITRATION AWARD AND OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD

ERVIN COHEN & JESSUP LLP

1   Nevertheless, consistent with the "strong default presumption" in favor of the FAA,

2   courts have also made clear that such choice-of-law provisions providing for "state

3   substantive, decisional law . . . do not trump the presumption that the FAA supplies

4   the rules for arbitration." *Sovak*, 280 F.3d at 1270; *see ValueSelling Assocs., LLC v.*

5   *Temple*, No. 09-CV-1493-JM, 2011 WL 2532560, at *2 (S.D. Cal. June 23, 2011),

6   aff'd, 520 F. App'x 593 (9th Cir. 2013) ("[T]he parties must explicitly state their

7   intent to incorporate California law *as it relates to arbitration*.") (emphasis in

8   original). Although the License Assignment and Lease contain a California choice-

9   of-law provision, neither the Arbitration Agreement nor any of the other agreements

10  comprising the Transaction specifically incorporate the CAA or any other

11  California law governing arbitration.[4] Without such incorporation, the FAA applies.

12      In sum, the Arbitration Agreement does not come close to evidencing a

13  "clear intent" to be bound by the CAA or any other state law governing arbitration.

14  The Arbitration Agreement thus warrants an uncontroversial application of the

15  "strong default presumption" in favor of the FAA. For these reasons, the FAA – not

16  the CAA – governs this motion and the competing Motion to Vacate.

17      **B.    The Arbitration Award Should Be Confirmed and Judgment**

18          **Entered Thereon.**

19      The FAA provides that where, as here, a party to a binding arbitration

20  _____

21  License Assignment and Lease "expressly disavow the Respondent's duty to abide
    by Federal law in Section 3.1." (Mot. at 8.) Section 3.1 states that those agreements

22  need not adhere to "federal law as it applies to the cultivation, processing, refining,
    modifying, packaging, distribution, sale and/or use of cannabis/marijuana." (*See*

23  Murphy Decl., Ex. B at 8.) The purpose of this Section is obvious – to avoid

24  attempts to invalidate the Transaction under principles of illegality.

25  [4] Petitioners also appear to argue that "mandatory preemption of State Law" does

26  not apply because, in certain sub-sections, the FAA uses permissive language such
    as "may," rather than mandatory language such as "shall." (Mot. at 8.) That

27  statutory language applies generally to the standard governing vacation of

28  arbitration awards (discussed *infra*), not to any issues of jurisdiction or preemption.

ERVIN COHEN & JESSUP LLP

8

requests that a court confirm an arbitration award within one year after the award is issued, the court "*must* grant such an order unless the award is vacated, modified, or corrected." 9 U.S.C. § 9  (emphasis added). Here, Respondents filed their Petition requesting confirmation of the Arbitration Award on July 9, 2020 (ECF No. 8), barely five months after the Arbitration Award was issued. Moreover, there are no grounds for "vacating, modifying, or correcting" the Arbitration Award. *Id.* As explained herein, the underlying arbitration proceedings and the Arbitrator's ultimate findings and awards were fair, correct, and in compliance with the FAA, and each of Petitioners' contentions disputing the validity of the Arbitration Award are meritless. Respondents are therefore entitled to an order confirming the Arbitration Award and a final judgment against Petitioners in the amount of $1,831,034.70, plus an award of prejudgment interest from the date of the Arbitration Award (February 5, 2020) until the date of entry of the Court's final judgment confirming the Arbitration Award. *See Fid. Fed. Bank*, 387 F.3d at 1024 ("[P]re-judgment interest is available from the date the arbitration panel renders its award."). This Motion to Confirm should be granted.

### C.   Petitioners Fail to Identify Any Grounds to Vacate The Award.

Petitioners' competing Motion to Vacate principally contends that, whether "under California law or Federal law, th[e] award must vacated." (Mot. at 8.) Pursuant to the FAA, a court "may make an order vacating [an arbitration] award" exclusively on four grounds:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly

9

ERVIN COHEN & JESSUP LLP

executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). The "burden of establishing grounds for vacating an arbitration award is _on the party seeking it_." _United States Life Ins. Co. v. Superior Nat'l Ins. Co._, 591 F.3d 1167, 1173 (9th Cir. 2010) (emphasis added); _see also Royal All. Assocs., Inc. v. Liebhaber_, 2 Cal. App. 5th 1092, 1106 (2016) ("The party seeking to vacate an arbitration award bears the burden of establishing that one of the [statutory] grounds [for vacatur] applies."). In this case, Petitioners fall far short of satisfying their burden to establish than any of the four grounds warranting a vacatur of the Arbitration Award applies. The Motion to Vacate should be denied.

### 1.    Cana Is Bound by the Arbitration Award.

Petitioners summarily argue for vacatur because the Arbitrator was allegedly "without jurisdiction to decide any matter involving CANA" since the Arbitration Agreement does "not have CANA as a party or as a signatory." (Mot. at 9.) Not only did Cana fail to preserve, and thus waived, this objection, the entire argument is moot because the Arbitrator made an express finding of fact that Cana is an alter ego of Shiber such that Cana is bound by the judgment.

_First_, although Cana was not a signatory to the Arbitration Agreement, Respondents explicitly sought – and obtained – a finding from the Arbitrator that Cana is an alter ego of Shiber, who _is_ a party and signatory to the Arbitration Agreement. (Murphy Decl., Ex. F at 15-16.) As such, Cana, must be bound by the arbitration clause. _Comer v. Micor, Inc_., 436 F.3d 1098, 1101 (9th Cir. 2006) (explaining that non-signatories may be bound to an arbitration clause under principles of "veil-piercing/alter ego" and "estoppel"). Neither Cana nor Shiber ever objected to Respondents' request for such a finding. _See Ralph Andrews Prods., Inc. v. Writers Guild of Am., W._, 938 F.2d 128, 130 (9th Cir. 1991) ("A party may not voluntarily submit his claim to arbitration, await the outcome, and, if the decision is unfavorable, then challenge the authority of the arbitrator to act."). Following a five-

10

ERVIN COHEN & JESSUP LLP

day arbitration hearing and briefing from counsel, and consistently with JAMS Rule 11, the Arbitrator resolved any issue of arbitrability as to Cana by finding that, "[a]s shown at the hearing, Cana is the alter-ego of Shiber."[5] (Murphy Decl., Ex. A at 2.) As Shiber's alter ego, Cana is therefore bound by the Arbitration Agreement and the Arbitration Award. *Comer*, 436 F.3d at 1101.

*Second*, Cana is equitably estopped from refusing to arbitrate because it "knowingly exploit[ed] the agreement containing the arbitration clause despite having never signed the agreement." *Comer*, 436 F.3d at 1101 (*citing E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 199 (3d Cir. 2001).) Indeed, as the Arbitrator found in footnote 3 of the Arbitration Award (Murphy Decl., Ex. A), the licenses were issued to Cana and, yet, Shiber offered the licenses for assignment in the Cannabis License Assignment (*Id.*, Ex. B). As such, Cana was reaping the benefits of its licenses through an agreement technically signed by Shiber. Cana may not "embrace[] the contract despite [its] non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract." *DuPont*, 269 F.3d at 200.

*Third*, Petitioners' suggestion that Cana can somehow circumvent JAMS Rule 11 and the Arbitrator's finding of "alter-ego" merely because it "objected to jurisdiction in its answer" is both factually and legally unsound. As explained *supra*, although Petitioners' Answer contained a generic "Twenty-First Separate Affirmative Defense" alleging that "the ***court*** has no jurisdiction over the complained of acts and alleged wrongdoings," Petitioners never raised any challenges to jurisdiction or arbitrability as to Cana, despite the Arbitrator's repeated invitations to do so. (*See* § II.B, *supra*.) In fact, Petitioners' counsel – who

---

[5] The Arbitrator made this finding after substantial evidence, including Shiber's own testimony, proved that Cana was merely a "shell" entity solely owned by Shiber for purposes of holding cannabis business licenses. (*See* Murphy Decl., Ex. A at 2.)

11

HAVE A HEART COMPASSION CARE, INC. AND RYAN KUNKEL'S COMBINED MOTION TO CONFIRM
ARBITRATION AWARD AND OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD

ERVIN COHEN & JESSUP LLP

1  represented Cana throughout the entirety of the arbitration proceedings – advised the

2  Arbitrator that Petitioners were not making any such challenges. (Murphy Decl. ¶ 9.)

3  Unsurprisingly, courts have held that nonsignatories to an arbitration agreement who

4  participate in arbitration proceedings and who fail to preserve their objection as to

5  arbitrability are estopped from later challenging the arbitrator's jurisdiction, even

6  when an issue of arbitrability was raised earlier in the proceedings. *See Dist. Council*

7  *of Iron Workers of State of California & Vicinity v. Pitner & Zenor*, 246 F.3d 673

8  (9th Cir. 2000) (non-signatory party that disputed "alter ego" status but "made no

9  reservation of its right to reserve [arbitrability] issue" for judicial determination

10 estopped from contesting arbitrability); *see also Douglass v. Serenivision, Inc.*, 20

11 Cal. App. 5th 376, 388 (2018) (nonsignatory that appeared without objection at

12 "multiple prehearing conferences" estopped). Cana's objection as to jurisdiction is

13 thus as belated (and waived) as it is unfounded.

14      <u>*Fourth*</u>, and finally, by failing to object to jurisdiction when asked by the

15 Arbitrator during the case management conference (and failing to ever raise the issue

16 during the arbitration after the boilerplate answer objecting to the "court's"

17 jurisdiction), Cana subjected itself to the rules of JAMS, which expressly relegate

18 questions of arbitrability to the Arbitrator. Where parties "agree to arbitrate the issue

19 of arbitrability, courts give the arbitrators' conclusion regarding arbitrability the

20 same respect otherwise accorded arbitrators' decisions." *PowerAgent Inc. v. Elec.*

21 *Data Sys. Corp.*, 358 F.3d 1187, 1191 (9th Cir. 2004) (citing *First Options of*

22 *Chicago, Inc. v. Kaplan*, 514 U.S. 938, 938 (1995).) Here, by adopting the JAMS

23 rules without objection, Cana, and all parties agreed to "arbitrate the issue of

24 arbitrability." Indeed, JAMS Rule 11 expressly provides that "[t]he Arbitrator has

25 the authority to determine jurisdiction and arbitrability issues as a preliminary

26 matter."[6] Given Cana's consent to the JAMS rule delegating arbitrability questions

27

28 [6] JAMS Rule 9(f) further provides that, "Jurisdictional challenges under Rule 11

12

ERVIN COHEN & JESSUP LLP

1 to the arbitrator, the "incorporation of the JAMS rules . . . establish [a] clear and

2 unmistakable intent to submit the issue of arbitrability to arbitration." *Wynn Resorts,*

3 *Ltd. v. Atl.-Pac. Capital, Inc*., 497 F. App'x 740, 742 (9th Cir. 2012).

4       Critically, even if the Court were to somehow determine that Cana was not

5 bound by the Arbitration Award, it still should be confirmed and made enforceable

6 against Shiber. As explained *infra*, the Motion to Vacate fails to adequately identify

7 any reasons to the contrary.

8            **2.     The Arbitrator Did Not Engage in Any Misconduct or Otherwise Prejudice Petitioners.**

9

10       Petitioners go to great lengths to advance a, frankly, ludicrous narrative that

11 the Arbitrator – a full-time neutral who has over 20 years of experience arbitrating

12 complex disputes at JAMS – engaged in "egregious examples of favoritism, bias,

13 vastly different treatment of one party as compared to the other, the belittling of

14 Shiber's attorney, [and] the feeding of testimony." (Mot. at 14.) Petitioners go so far

15 as to file into public record, without her consent, multiple photographs of the

16 Arbitrator seemingly taking notes during a confidential arbitration hearing and even

17 declaring under penalty of perjury and without any corroborating evidence that the

18 Arbitrator exhibited "a racist bias against [Shiber] and [his] attorney." (*Id.*; ECF No.

19 14-14 ¶ 11 (Declaration of Elias Shiber).)

20       Put simply, there is *no evidence* even remotely indicating that the Arbitrator

21 engaged in such "egregious" misconduct or acted in a way to "substantially

22 prejudice" Petitioners. In fact, despite Petitioners' blatantly misleading

23 characterizations of the record – *e.g.,* repeatedly attributing statements on the record

24 to the Arbitrator that were, in fact, made by counsel or witnesses  – Petitioners' *own*

25

26 shall be deemed waived, unless asserted in a response to a Demand or counterclaim
or promptly thereafter, when circumstances first suggest an issue of arbitrability."
27 JAMS COMPREHENSIVE ARBITRATION RULES & PROCEDURES (July 1, 2014),
*available at* https://www.jamsadr.com/rules-comprehensive-arbitration/.
28

ERVIN COHEN & JESSUP LLP

exhibits submitted in support of the Motion to Vacate confirm that the Arbitrator at all times acted professionally and fairly. In the end, Petitioners' theory of the Arbitrator's bias is a woeful, unjustified personal attack on an esteemed neutral. It also fails to state any grounds warranting a vacatur of the Arbitration Award. *See Hernandez*, 2010 WL 2505683, at *8 ("[A] disappointed party's perception of rudeness by the arbitrator is not the sort of 'evident partiality' contemplated by the FAA as grounds for vacatur."). While Respondents take accusations of bias and racism seriously, Petitioners' arguments here should be disregarded out of hand.

### (a)   The Arbitrator Did Not Exhibit Bias or Disparately Treat the Parties.

Petitioners' central contention supporting their Motion to Vacate is that the Arbitrators' "conduct and comments were diametrically different" when dealing with Petitioners than when dealing with Respondents, supposedly evidenced by strings of citations to the official transcript from the arbitration hearing. (Mot. at 11-15.) Even a cursory review of the transcript pages cited, however, tells a far different story than the story Petitioners put forth.

As just one example, the first pages of the transcript that Petitioners filed (ECF No. 14-5 at 5) were cited in support of their argument that the Arbitrator was "enamored" with Kunkel. (Mot. at 11.) In truth, those pages show comments made in an opening statement by Respondents' **_counsel_**, who candidly remarked that he was "very proud of [Kunkel]." (*Id.*) As another example, in support of their argument that the Arbitrator unfairly applied different standards to the parties' objections, Petitioners claim that the Arbitrator once overruled Respondents' objections and quipped that Petitioners might "finally have a chance in this case." (Mot. at 12.) As the transcript show, that comment was actually made by Petitioners' **_counsel_**, not the Arbitrator. (ECF No. 14-6 at 36.) In other instances, Petitioners cite to portions of the transcript that do not even arguably support their contention, including mundane dialogue with the Arbitrator. (*See, e.g.,* ECF No. 14-8 at 40-42

1   (Arbitrator's request for clarification on spelling of witness's name).)

2       Remarkably, as their Exhibits "1" through "3," Petitioners attach a series of

3   photographs secretly taken by Shiber himself during the confidential arbitration

4   hearing, depicting the Arbitrator on her personal tablet (iPad) device, on which she

5   took notes during witness examinations. (ECF Nos. 14-1, 14-2, 14-3.) Besides the

6   unseemly impropriety (or illegality)[7] of publicly filing these photographs, Petitioners

7   accuse the Arbitrator of "sending and receiving personal texts or emails," such that

8   she was "forced to apologize to being distracted." (Mot. at 14.) Once again,

9   Petitioners' supporting citations to the transcript  – including, ironically, a citation to

10   an exchange where ***Petitioners'*** counsel complimented the Arbitrator as "an astute

11   legal mind" – simply do not support this account. (*Id.* (citing ECF No. 14-5 at 8.)

12       Irrespective of Petitioners' mischaracterizations, the transcript clearly

13   demonstrates that, to the extent that the Arbitrator did interact with the counsel,

14   parties, and witnesses, she did so without bias or favoritism. In fact, on several

15   occasions, she assertively (but respectfully) urged *Respondents' counsel* to expedite

16   his witness examinations and remarked that certain portions of those examinations

17   appeared to be irrelevant. (*See* Murphy Decl., Exs. K-L.) Meanwhile, on other

18   occasions, she encouraged and even complimented Shiber and Petitioners'

19   witnesses, including Petitioners' lead expert, Yelena Katchko, Esq., an attorney

20   whom the Arbitrator praised as having "a lot of expertise" and whom the Arbitrator

21   (jokingly) suggested Respondents should have hired. (*Id.*, Ex. M.) When

22   Respondents' counsel objected to the expert's testimony, the Arbitrator responded,

23   bluntly, "Overruled. She's a lawyer. Let her answer the question. Please don't

24   interrupt this." (*Id.* at 219.)

25

26   [7] The public disclosure of these photographs is by itself violative of JAMS Rule 26.

27   *See* "Rule 26. Confidentiality and Privacy," JAMS COMPREHENSIVE ARBITRATION

28   RULES & PROCEDURES (July 1, 2014), *available at* https://www.jamsadr.com/rules-comprehensive-arbitration/.

HAVE A HEART COMPASSION CARE, INC. AND RYAN KUNKEL'S COMBINED MOTION TO CONFIRM
ARBITRATION AWARD AND OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD

ERVIN COHEN & JESSUP LLP

1    Petitioners' own evidence confirms that their accusations of bias and

2  favoritism against the Arbitrator are grossly unfounded and an unseemly personal

3  attack on a well-respected neutral. As is more relevant to this Motion, none of those

4  accusations provide any grounds to vacate the Arbitration Award.

5                    **(b)    Petitioners Were Not Prejudiced.**

6    Even if the Petitioners could manufacture some theoretical evidence of bias or

7  favoritism, their Motion to Vacate still fails because they cannot establish that they

8  were "prejudiced" by such bias or favoritism. As discussed above, the Arbitrator's

9  interactions with counsel, parties, and witnesses were entirely reciprocal. (*See* §

10  III.C.2(a).) Indeed, throughout the hearing, neither Petitioners nor Respondents

11  objected on the record to her conduct during the arbitration proceedings. (Murphy

12  Decl. ¶¶ 9, 22.) Other than Shiber's self-serving declaration accusing the Arbitrator

13  of a "racist bias," the Motion to Vacate does not identify any evidence indicating

14  that the Arbitration Award was somehow unfairly influenced by the Arbitrator's

15  conduct at the hearing. *See A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d

16  1401, 1403 (9th Cir. 1992) (where alleged wrongdoing known during arbitration,

17  losing party who did not object would not be given "second bite at apple").

18    More fundamentally, as courts have made abundantly clear, "[a]bsent some

19  sort of overt misconduct, a disappointed party's perception of rudeness by the

20  arbitrator is not the sort of 'evident partiality' contemplated by the FAA as grounds

21  for vacatur." *Hernandez*, 2010 WL 2505683, at *8; *see, e.g., Fairchild & Co., Inc. v.

22  Richmond, F. & P. R. Co.*, 516 F. Supp. 1305, 1313 (D.D.C. 1981) (claim that an

23  arbitrator "displayed 'personal hostility' toward [] counsel, manifested by rudeness

24  and interruptions during the proceedings" insufficient). The few cases in which

25  arbitration awards were vacated on this basis almost universally involve evidence of

26  *ex parte* dealings between the arbitrator and the prevailing party, which Petitioners

27  do not allege here. *See, e.g., Maaso v. Signer*, 203 Cal. App. 4th 362, 372-75 (2012)

28  (*ex parte* communication with neutral arbitrator constituted "undue means").

ERVIN COHEN & JESSUP LLP

16

1    Ultimately, it is apparent that Petitioners are disappointed by the Arbitration

2    Award, and have resorted to the age-old tactic of slinging mud at the neutral in

3    charge. Unfortunately for Petitioners, none of their accusations are supported by the

4    evidence, including the evidence they cite. The Motion to Vacate should be denied.

5             **3.       Petitioners' Attempt to Relitigate the Dispute Fails.**

6    Lastly, Petitioners contend, with barely any citations to law or evidence, that

7    the Arbitration Award's rescission of the Transaction was improper. Critically,

8    Petitioners do not base this argument on any jurisdictional grounds – they concede

9    that the Transaction "g[ave] the Arbitrator the right to rescind" – but instead contend

10   that the Arbitration Award must be vacated because the contractual provisions

11   providing for rescission were allegedly not triggered (they were), because

12   Respondents allegedly did not serve timely notice of rescission (they did), and

13   because Respondents allegedly breached the terms of the Transaction (they did not),

14   among other affirmative defenses. (Mot. at 20.) These issues were all admittedly

15   addressed in the underlying arbitration proceedings and in the Arbitration Award

16   itself. (*See* Murphy Decl., Ex. A at 4-9 ("The evidence was clear that there was

17   never an effective assignment to HAH of the Maywood licenses").)

18   Nonetheless, Petitioners effectively seek to _relitigate_ the entire dispute

19   without even _attempting_ to explain how any of the FAA's four grounds for vacatur

20   applies. In fact, the Motion to Vacate's arguments are mostly a *verbatim* copy-and-

21   paste of their closing brief submitted to the Arbitrator following the arbitration

22   hearing. (*Compare* Mot. at 19-22 *with* Murphy Decl., Ex. N (Closing Brief) at 19-

23   23.) The Arbitrator reviewed that brief and the evidence and argument presented at

24   the hearing, and expressly found that adequate grounds for rescission applied, as set

25   forth in her highly detailed, 12-page Arbitration Award. (*See id.*) Even if Petitioners

26   could identify some error in the Arbitrator's legal and evidentiary conclusions (they

27   cannot), mere error alone does not provide grounds to "second guess" an arbitration

28   award. As the Supreme Court put it, "as long as the arbitrator is even arguably

ERVIN COHEN & JESSUP LLP

17

construing or applying the contract and acting within the scope of his authority, that a court is convinced [s]he committed serious error does not suffice to overturn h[er] decision." *United Paperworkers Intern. Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987); *see also Moncharsh v. Heily & Blasé*, 3 Cal. 4th 1, 28 (1992) (award not vacated "merely because [arbitrators] assign an erroneous reason for their decision"). This rule naturally stems from the principle that "courts must not decide the rightness or wrongness of the arbitrators' contract interpretation, only whether the panel's decision draws its essence from the contract." *Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1024 (9th Cir. 1991); *see also Advanced Micro Devices, Inc. v. Intel Corp.*, 9 Cal. 4th 362, 377 (1994) ("A decision exceeds an arbitrator's powers only if it is so utterly irrational that it amounts to an arbitrary remaking of the contract between the parties.").

Despite their lengthy rehash of facts and law already litigated, and despite having the "burden of establishing grounds for vacating an arbitration award," Petitioners fail to identify any grounds for a vacatur under the FAA. *United States Life Ins.*, 591 F.3d at 1173. Once again, the Motion to Vacate should be denied.

### 4. In Any Event, The Arbitrator Properly Rescinded the Transaction.

Even if the Court were to entertain Petitioners' arguments concerning the substantive merits of the Arbitration Award, evidence presented at the hearing confirmed the simplicity of Respondents' claim for rescission, which was based upon a straightforward application of the provisions in the License Assignment and Lease providing that the Transaction would be "terminated and/or mutually rescinded" in the event that the Licenses were not "fully transferable and assignable" or did not successfully deliver to Respondents "approval and legal authority to conduct the cannabis businesses." (Murphy Decl., Ex. B at 4, Ex. C at 3.) Under California law, contracts may be – and routinely are – rescinded pursuant to express terms setting forth specific conditions of rescission. *See TIG Ins. Co. of*

18

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1   *Michigan v. Homestore, Inc.* (2006) 137 Cal. App. 4th 749, 759 (enforcing

2   "rescission provision"); Cal. Civ. Code § 1689(a).

3       As the Arbitration Award makes clear, the evidence presented showed, in

4   short, that it was beyond reasonable dispute that the Transaction's rescission

5   provisions were triggered. Specifically, the City of Maywood – the issuer of the

6   Licenses – unequivocally *rejected* Cana's assignment of the Licenses to

7   Respondents due to its failure to seek the prior approval of the assignment from the

8   City, as is required under the Maywood Municipal Code. Indeed, at the hearing, two

9   of Petitioners' own witnesses, including Ms. Katchko, confirmed that Respondents

10  were prohibited from ever operating a retail cannabis dispensary in the City of

11  Maywood, defeating the entire purpose of the Transaction. (Murphy Decl., Ex. A at

12  9.) Based upon this evidence, the Arbitrator found that the Licenses were not "fully

13  transferable and assignable" and did not successfully deliver to Respondents

14  "approval and legal authority to conduct the cannabis businesses," and thus held that

15  Respondents properly rescinded the Transaction pursuant to the express rescission

16  provisions.[8] (Murphy Decl., Ex. B at 4, Ex. C at 3.) In this regard, the Arbitrator

17  heard, and ultimately resolved, a fairly straightforward action for rescission. The

18  resulting Arbitration Award should not be vacated.

19       **D.    The CAA Does Not Compel A Different Result.**

20       Notably, even if the CAA did apply to the instant motion and the Motion to

21  Vacate (it does not), the Court still must confirm the Arbitration Award. Similar to

22  the FAA, the CAA provides that, upon a party's request, "the court *shall* confirm the

23  [arbitration] award as made . . . unless . . . it corrects the award . . . , vacates the

24

25  ―――――――――――――
    [8] Besides being inappropriate for adjudication at this stage, Petitioners' contentions
26  regarding the timeliness and promptness of Respondents' rescission are baseless. As
    the Motion to Vacate itself explains, Respondents served notice of their rescission of
27  the Transaction just weeks after it learned that they would be unable to conduct the
    cannabis business contemplated in the Transaction. (*See* Mot. at 17.)
28

19

award or dismisses the proceedings." Cal. Code Civ. Proc. § 1286 (emphasis added). As courts have recognized, the CAA "tracks the FAA language except that it permits a court to vacate an arbitration award in two additional circumstances" – namely, where "the rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing . . . or [] to hear evidence material to the controversy" and where the arbitrator was "subject to disqualification" for statutory reasons or failed to disclose his or her grounds for disqualification. *Golden State Bank v. First-Citizens Bank & Tr. Co.*, No. 10-526-GW, 2012 WL 12985121, at *3 (C.D. Cal. Apr. 30, 2012); Cal. Code Civ. Proc. § 1286.2.

As explained above, Petitioners failed to satisfy their burden to establish any of the four grounds for vacatur under the FAA, which are also grounds for vacatur under the CAA. Moreover, Petitioners have not even attempted to show that the "two additional circumstances" for vacatur under the CAA apply. *See Golden State Bank*, 2012 WL 12985121. Nor can they. The Arbitrator never refused to "postpone the hearing" or "hear evidence material to the controversy," let alone "substantially prejudiced" Petitioners by doing so. Cal. Code Civ. Proc. § ("CCP") 1286.2(a)(5). There are also no known grounds – statutory or otherwise – for the Arbitrator's disqualification from presiding over the arbitration. CCP § 1286.2(a)(6).

Accordingly, the CAA's standard for vacatur is hardly less rigorous than the FAA's standard for vacatur. Even if the Court were to apply the former, it should still summarily deny the Motion to Vacate.

## IV.   <u>CONCLUSION</u>

For the reasons stated herein, the Arbitration Award should be confirmed. Respondents respectfully an Order: (1) granting this motion; (2) denying the competing Motion to Vacate, and (3) confirming the Arbitration Award and a final judgment against Petitioners in the amount of $1,831,034.70, plus an award of prejudgment interest from the date of the Arbitration Award (February 5, 2020) until the date of entry of the Court's final judgment confirming the Arbitration Award.

ERVIN COHEN & JESSUP LLP

20

DATED:  August 31, 2020          ERVIN COHEN & JESSUP LLP


                                 By:   ___/s/ Michael D. Murphy___
                                       Michael D. Murphy
                                       Attorneys for Respondents and Counter-
                                       Petitioners Have A Heart Compassion
                                       Care, Inc. and Ryan Kunkel

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 9401 Wilshire Boulevard, Ninth Floor, Beverly Hills, California 90212-2974.

On August 31, 2020, I served the within document(s) described as: **RESPONDENTS AND COUNTER-PETITIONERS HAVE A HEART COMPASSION CARE, INC. AND RYAN KUNKEL'S NOTICE OF HEARING AND OPPOSING MOTION TO CONFIRM ARBITRATION AWARD** on the interested parties in this action as stated below:

Faryan A. Afifi, Esq.                                Attorneys for Petitioners and
1801 Century Park East, Suite 1100                        Counter-Respondents
Los Angeles, CA 90067                            *ELIAS SHIBER and CANA, INC.*
Tel:  (310) 407-3000
Fax: (310) 407-3004
*E-MAIL: faryan@afifilaw.com*

☒  **(BY MAIL on September 1, 2020)** By placing a true copy of the foregoing document(s) in a sealed envelope addressed as set forth above.  I placed each such envelope for collection and mailing following ordinary business practices.  I am readily familiar with this Firm's practice for collection and processing of correspondence for mailing.  Under that practice, the correspondence would be deposited with the United States Postal Service on that same day, with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒  **BY CM/ECF NOTICE OF ELECTRONIC FILING on August 31, 2020:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I certify that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on August 31, 2020, at Lancaster, California.

I declare under penalty of perjury that the foregoing is true and correct.

| | |
|---|---|
| Ayesha Rector | */s/ Ayesha Rector* |
| (Type or print name) | (Signature) |

HAVE A HEART COMPASSION CARE, INC. AND RYAN KUNKEL'S COMBINED MOTION TO CONFIRM
ARBITRATION AWARD AND OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD

ERVIN COHEN & JESSUP LLP