# EXHIBIT A

JAMS ARBITRATION

CASE No.  1210036053

---

Have a Heart Compassion Care, Inc. and
Ryan Kunkel

Claimants and Cross-Respondents

and

Elias Shiber and CANA, Inc.

Respondents and Cross-Claimants

---

FINAL AWARD

Michael D. Murphy
Kenneth P. Hsu
Ervin Cohen & Jessup LLC
9401 Wilshire Blvd., Ninth Floor
Beverly Hills, CA 90212
P:    310.273.6333
E:    mmurphy@ecjlaw.com
      khsu@ecjlaw.com

Counsel for Claimants and Cross-Respondents

1

Faryan Andrew Afifi
Afifi Law Group
1801 Century Park East, Ste. 1100
Los Angeles, CA 90067
P:      310.407.3000
E:      faryan@afifilaw.com

Counsel for Respondents and Cross-Claimants


The undersigned Arbitrator, having been designated in accordance with section 6.2 of the four Cannabis License Agreements as well as section 6.2 of the Lease and Paragraph 12 of the License Guarantee in addition to the Procedural and Scheduling Order dated May 7, 2019, and having examined the submissions, proof and allegations  presented, and having received and considered the oral testimony of witnesses, hereby renders this Final Award as follows:


I.      INTRODUCTION AND PROCEDURAL STATEMENT

This arbitration arises out of the efforts of Mr. Kunkel, the CEO of Have a Heart ("HAH"), to establish a cannabis dispensary in Maywood, California.   Working with a local attorney, Mr. Welch, Kunkel learned of an opportunity to obtain the assignment of four cannabis licenses as well as a lease for a dilapidated building from one of Mr. Welch's longtime clients, Mr. Shiber, who held the licenses in the name of CANA, Inc.[1]  After working with Welch and Shiber and paying substantial fees and construction costs, Kunkel learned that, in fact, the assignment of the licenses was not possible and the building could not legally

---

[1] As shown at the hearings, Cana is the alter-ego of Shiber.  A few documents in the case incorrectly identified Kunkel as an operator of Cana because Welch hoped that these documents would help him accomplish the assignment of the licenses.  The existence of these false documents erroneously identifying Kunkel as an officer of Cana does not make it so (Ex. 221).

2

be renovated as a cannabis dispensary pursuant to the regulations of the City of Maywood.  As a result, Kunkel and HAH claim that the entire transaction should be rescinded pursuant to the language of the contracts.[2]

In response, counsel for Shiber asserts that his client has dyslexia and therefore depended on Welch, his long-time attorney, for the interpretation of the documents and an understanding of the transaction.  He asserts claims for breach of contract, breach of fiduciary duties, and fraud in addition to various claims for damages.

This arbitration is governed by the JAMS Comprehensive Arbitration Rules and Procedures, effective July 1, 2014, and JAMS is administering the case.  The merits are to be decided pursuant to California law.

Hearings in this case were held in the Century City JAMS office for five days, November 18-22, 2019.  The following witnesses testified at the hearings in this order:  Ryan Kunkel, DR Welch, Charlie Wells, Jose Davila, Joe Garcia, Elias Shiber, Michael Murphy, Michael Raquiza, Felipe Velarde, Vince DeLuca, David Mango, and Yelena Katchko.

Both parties offered documentary evidence at the hearings and that evidence was admitted.  At the end of the last hearing day, both sides stated that they had no further evidence to offer.

The parties submitted simultaneous closing briefs on December 5 and counsel presented closing arguments via ZOOM on December 16, 2019.

---

[2] The contracts contain a condition precedent requiring the effective assignment of the cannabis licenses to HAH and, failing that, rescission of the entire transaction (Exs. 1 and 2, section 2.2).

3

II.    FACTS

The following is a statement of those facts found by the Arbitrator to be true and necessary to the Award.  To the extent that this recitation differs from any party's position, that is the result of determinations regarding credibility and relevance, considerations of burdens of proof, and the weighing of evidence, both oral and written.

Kunkel is CEO of HAH, a Seattle based business that operates several legal cannabis dispensaries in five states.  When looking for new locations, it is his practice to find a local attorney to help locate opportunities and handle the requirements of the local laws.  While looking for locations for new HAH dispensaries in California, Kunkel was introduced to Welch, an attorney known in the industry for initiating and handling cannabis business deals.  Welch introduced Kunkel to Shiber, who owned four cannabis licenses and a very run-down warehouse in the City of Maywood, California.[3]

Kunkel signed an Engagement Agreement with Welch that included a broad scope of legal services (Ex. 7). Then, on February 1, 2018, Shiber and HAH entered into the transaction at the heart of this dispute (Exs. 1-5).[4]  The parties entered four agreements and an addendum through which Cana and Shiber were to assign the cannabis licenses to HAH in exchange for a licensing fee of $25,000 per month and also lease the warehouse for $26,000 per month along

---

[3] This dispute deals with licenses issued by the City of Maywood, not the State of California.  The four licenses issued to Cana are for the cultivation, distribution, manufacturing, and retail dispensing of cannabis. The warehouse property is located at 4027 E. 52nd Street, Maywood, CA.  Shiber also has rights to a nearby property to use for parking.

[4] Legalization of cannabis for recreational use in California became effective on January 1, 2018, pursuant to Proposition 64.

4

with a $950 maintenance fee (Exs. 1-5).  Kunkel agreed to personally guarantee payment.[5]

Significantly, the entire transaction was conditioned upon the effective assignment of the licenses to HAH.  As set forth in section 2.2 of the agreements, the licenses must be "fully transferable and/or assignable" from Cana to HAH and the licenses must provide HAH with "legal approval" to conduct the cannabis businesses described in the licenses (Exs. 1 and 2).  Further, if these conditions are not met, the agreements state that both parties shall declare the transaction "terminated and/or mutually rescinded" (Exs. 1 and 2, section2.2.3).

During the negotiation of the contract terms, Welch orchestrated the deal and, remarkably, purported to represent both parties.   He had both Kunkel and Shiber sign a conflicts waiver on January 25, 2018 (Ex. 8 ), and then proceeded to advance the deal with the approval and cooperation of his friend and long-time client, Mr. Shiber.[6]  When dealing with Kunkel, Welch reassured him by stating that he knew and had influence with those in charge of such developments in the City of Maywood.   Therefore, he claimed that he could turn the plan to create a new HAH dispensary into reality.

When dealing with Shiber, he held out the possibility of a huge payout, including hefty monthly payments for the use of the licenses in addition to rent for the warehouse.  At one time, he even promised Shiber a 99-year deal,

---

[5] After some negotiation, Shiber agreed to give HAH three months free rent while renovations were underway (Ex. 5).

[6] Mr. Welch is not a party to this arbitration and so this award does not make a finding about the legitimacy of the conflicts waiver and/or the ethics of Welch's actions.  Both parties have separate claims against Welch.   For years, Welch represented Shiber on multiple matters.

although it turned out that there was only a one-year deal on the licenses and a five-year lease on the warehouse.  What Welch and Shiber hid from Kunkel was the fact that Welch was getting a cut of both the $300,000 security deposit and also a portion of the monthly license fees.[7] While pretending to represent both parties, it appears that Welch worked with Shiber to take advantage of HAH, the company from out of state.  Apparently, both Welch and Shiber saw HAH as a "cash cow."

Counsel for Shiber attempted to defend him on the ground that he has dyslexia and was unable to review and understand the license agreements and lease.  Shiber testified that he had for years depended on Welch to explain legal documents to him and expected that Welch would do so here.  But this testimony is not credible in light of the fact that Shiber owns and manages several properties and has been involved in numerous business deals where Welch served as his attorney.  Even if Shiber can truthfully claim that, initially, he did not understand all of the terms of the deal with HAH, the underhanded situation was brought into clear focus for Shiber within only weeks of signing the contracts when, on February 26, 2018,  he received a check for $264,000, part of the $300,000 security deposit Kunkel had made for the licenses and the lease of the warehouse:  Welch had kept a portion of that money and sent the rest to Shiber (Ex. 29).  Kunkel was not aware that, in addition to the charge to HAH for the HAH attorney fees, Welch was taking a cut.  Kunkel also was not aware that Shiber did not keep the security deposit in Welch's trust account or in an escrow account administered by a third party as required by section 2.6

---

[7] Welch kept $30,000 that was part of the security deposit and sent the rest to Shiber even though all of the money was supposed to be kept in Welch's trust account. He also kept $6,000 from each monthly payment.

6

of the Assignment Agreement and Lease, but instead deposited it in Shiber's personal account.  At the time of the hearings, Shiber admitted that he had spent the security deposit and had nothing left.[8]

Meanwhile, Kunkel was making the promised payments to Shiber and moving forward with an elaborate renovation of the dilapidated warehouse to create a very attractive cannabis dispensary that featured the best in lighting, display cases, and other materials.[9]  When issues were raised about the assignability of the licenses or the permits to proceed with construction, Welch assured Kunkel that all was well and that he could and would successfully handle any issues raised by the City of Maywood.  Shiber claims not to have been informed of the details.  He simply stood by and collected the money.

As HAH proceeded with the ambitious work of turning the old warehouse into a modern dispensary, Kunkel believed that Welch was handling all of the legal obstacles as he promised to do.  That belief was shattered when the City building authorities visited the project and issued a stop order to shut down construction, asserting that HAH had no building permits and that the construction failed to conform with the Conditional Use Permit.  That CUP had been issued to Shiber but it was never disclosed to Kunkel and HAH.[10]  In addition, Kunkel learned that the City claimed that Shiber's four cannabis licenses were held by Cana and were not transferable to HAH.

---

[8] The evidence showed that Shiber and Welch were working together. Counsel for Shiber tried to show that Welch was working with Kunkel and HAH to Shiber's detriment, an assertion not supported by the evidence.

[9] Cannabis businesses cannot use the banking system.  HAH had a system under which its payments were made by an entity called InterUrban.

[10] Not only was the CUP undisclosed, it was limited to a cannabis "grow" operation, not the dispensary planned by Kunkel and HAH (Ex. 28).

7

The entire deal had been conditioned upon the effective transfer of the licenses from Shiber/Cana to Have A Heart, as set forth in section 2.2 of the License Assignment and Lease.[11]  In a Letter dated November 7, 2018, the City of Maywood refused to allow an assignment and extend the rights arising out of those licenses to HAH (Ex. 37).   Therefore, Kunkel and HAH demanded rescission on January 15, 2019 (Ex. 40).  California Civil Code section 1689. After rescission, Kunkel and HAH claim damages as set forth below.

In response, counsel for Shiber remarkably makes claims for breach of contract, breach of fiduciary duty, and fraud.  Though those claims are confusing, it appears that Shiber believes that HAH should make additional payments for the licenses and for the rent of the warehouse, exceeding $1 million, and also reimburse him for the value of the cannabis licenses in the neighborhood of $5 million.  Even more remarkably, he claims another $460,000 to bring the dilapidated warehouse back to its original condition (Ex. 206).[12] These claims are surprising, both because of the facts recounted above and because they are unsupported by any persuasive evidence.[13]

III.    DETERMINATIONS ON THE CLAIMS

A.  Rescission is the appropriate remedy

---

[11] The evidence was clear that there was never an effective assignment to HAH of the Maywood licenses and that HAH could not receive approval to conduct business in the City of Maywood (Ex. 37).

[12] The question of how the newly modernized building could be restored to its former disastrous and crumbling condition was not clear.  In any event, the City's Mr. Mango testified that the City would not require Shiber to demolish or remove any of HAH's improvements and the property could be used for other commercial purposes.

[13] The testimony of Ms. Katchko, an accomplished attorney familiar with cannabis transactions, was interesting but not helpful because it was just a look at what might have been, not what actually happened here.

Pursuant to the language of section 2.2 of both the assignments and the lease, rescission is the appropriate remedy.  Both conditions for rescission occurred: the licenses could not be assigned and HAH did not get legal approval to conduct a cannabis business.  Civ. Code, section 1692.  TIG Ins. Co. of Michigan v. Homestore, Inc. (2006) 137 Cal.App.4th 749, 759.  Therefore, Shiber is to refund all of the money paid by Kunkel and HAH under the rescinded agreement in the amount of $716,714.53 plus interest.[14]

B.  Unjust Enrichment

In addition to paying the licensing fees and rent, Kunkel also invested $651,049.55 to rehabilitate Mr. Shiber's building.  Unjust enrichment involves "receipt of a benefit and unjust retention of the benefit at the expense of another."  Lectrodryer v. SeoleBank (2000) 77 Cal. App. 4th 723,726.  Shiber has retained this property and can either sell it or rent it for some kind of commercial use.  Shiber has been unjustly enriched and is to reimburse Kunkel and HAH for the entire amount invested in Shiber's property.

C.  Shiber's claims are denied

As set forth above, Shiber has not met his burden of proof to support his claims for breach of contract, breach of fiduciary duty, and fraud.  Those claims are denied.  After the notice of rescission, no additional payments had to be made by HAH so there was no breach of contract.  Further, Kunkel had no

---

[14] The Guarantees executed by Kunkel personally guaranteeing the Assignment Agreement and Lease are rescinded and no longer have any force and effect per Civ. Code section 1689(a). Exs. 3 and 4.

9

fiduciary duty to Shiber and Shiber's counsel presented no basis for that claim. Finally, under these facts, a claim for fraud is not supported by the evidence.[15]

IV.   Award of Attorneys' Fees and Costs and Prejudgment Interest to Claimants Kunkel and Have a Heart

1.   Attorneys' Fees and Costs

The scope of the attorneys' fees and costs provisions in section 6.2 of the Assignment Agreements and Lease and section 12 of the Personal Guarantees is very broad.  Claimants Kunkel and HAH are the prevailing parties and are entitled to an award of reasonable fees and costs incurred.  The Arbitrator has reviewed the submissions from the parties regarding fees and costs, including the Application for Fees and Costs and Prejudgment Interest and the supporting Declaration of Michael D. Murphy as well as copies of invoices and receipts.  Careful consideration of the factual and legal arguments has led to the following award to Kunkel and HAH pursuant to JAMS Rule 24 and California law:

The fees claimed by the Ervin Cohen & Jessup firm appear reasonable, both in terms of the rates charged and the number of hours expended.  In addition, the rates charged are within the prevailing rates in the Los Angeles area for this type of case.  In fact, the rates ordinarily charged for both Mr. Murphy and Mr. Hsu were reduced for the purposes of this arbitration (Murphy Declaration and

---

[15] The claim for sanctions advanced by counsel for Shiber is denied.

10

the Laffey Matrix, pp. 3-5).[16]  Therefore, Claimants Kunkel and HAH are awarded reasonable attorneys' fees and costs in the amount of $279,106 for fees and $90,257.49 for costs, a total of $369,363.49.[17]

2. Prejudgment Interest

On January 15, 2019, Mr. Murphy sent a letter entitled "Notice of Rescission" to Mr. Shiber's prior counsel.  Therefore, prejudgment interest runs from that date to January 8, 2020, at the rate of 7% per annum. Claimants Kunkel and HAH are awarded prejudgment interest in the amount of $93,907.31.

V.    Final Award

1.   Kunkel and HAH are awarded $716,714.53 on their claim for rescission.

2. Kunkel and HAH are awarded $651,049.55 on their claim for unjust enrichment.

3. Therefore, Kunkel and HAH are awarded a total amount of $1,367,764.08 plus $93,907.31 in prejudgment interest.

4. Kunkel and HAH are the prevailing parties.  Pursuant to the language of the contracts, section 6.2 of the Assignment Agreements and Lease and section 12 of the Guarantees, they are entitled to reasonable attorneys' fees and costs in the amount of $369,363.49.

---

[16] Besides Mr. Murphy and Mr. Hsu, the invoices include work done by two paralegals, Ms. Emerson and Ms. Castelli.

[17] Pursuant to Rule 31 (c), the amount of fees awarded to Claimants has been increased by $8,568.  A portion of that amount was paid by Claimants on behalf of Respondent.

5. The total amount awarded to Claimants Kunkel and HAH is $1,831,034.70.

This Final Award is in full and complete settlement and satisfaction of any and all claims submitted in this arbitration.  Any other claim not specifically addressed herein is deemed denied.

February 5, 2020

*Zela G. Claiborne*

Zela G. Claiborne, Arbitrator

12